UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LILLIAN DENISE ADAMS, | ) | Civil Action No.: 4:21-cv-03174-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| -vs- | ) | |
| | ) | |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB on February 21, 2019, alleging disability beginning on October 29, 2015. (Tr. 18). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in January 2021, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 18). The Administrative Law Judge (ALJ) issued an unfavorable decision on February 18, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 18-27). Plaintiff filed a request for review of the ALJ's decision and submitted additional evidence to the Appeals Council. The Appeals Council denied the request for

review. (Tr. 1-8).  In September 2021, Plaintiff filed this action. (ECF No. 1).

B.   **Plaintiff's Background and Medical History**

Plaintiff was born on September 30, 1960, and was almost 60 years old at the initial determination. (Tr. 80).  Plaintiff alleges disability originally due to lumbar degenerative disc disease, post-fusion, radiculopathy, right shoulder pain, type 2 diabetes, and hypertension. (Tr. 80-81).  Relevant records will be addressed under the pertinent issue headings.

C.   **The ALJ's Decision**

In the decision of February 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 18-27):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since October 29, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine status-post decompression at L4-L5 and posterolateral fusion at L4-L5 and L5-S1 with hardware placement (April 2016) (Exhibit 1F at p. 10), type II diabetes mellitus (Exhibits 2F, 9F, 14F), peripheral neuropathy (Exhibits 11F, 14F, 23F), recurrent sinusitis (Exhibits 2F, 18F), hypertension (Exhibit 3F), rotator cuff syndrome of the right shoulder (Exhibits 6F, 11F), and left knee osteoarthritis (Exhibits 6F, 8F) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that she can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds. She can stand and/or walk in combination, with normal breaks, for at least two hours

      during an eight-hour workday; and she can sit, with normal breaks for six to eight hours during an eight-hour workday. The claimant can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally perform overhead reaching with her right arm/hand, but she should not be required to perform push/pull movements or operate foot controls with her lower extremities bilaterally. She should not be required to work in exposure to extreme heat, extreme cold, humidity or in areas of vibration. She can tolerate occasional exposure to pulmonary irritants including fumes, dust, gases, odors, and areas of poor ventilation. The claimant should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, and operating motorized vehicles and equipment.

6.     The claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2015, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective complaints of pain allegedly resulting in an inability to focus/concentrate. Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12

consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective complaints of pain allegedly resulting in an inability to focus/concentrate. Plaintiff frames this as an RFC issue in the brief's heading but then cites to the two-part pain evaluation criteria and SSR 96-7p. (ECF No. 21 at 8-9). SSR 96-7p was rescinded three years before Plaintiff's application date. SSR 16-3p replaced SSR 96-7p, and is titled Evaluation of Symptoms. The Fourth Circuit Court of Appeals has recently made

clear that an RFC determination "is a separate and distinct inquiry from a symptom evaluation."[3] *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021). SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted). Plaintiff's arguments are essentially based on Plaintiff's allegations of pain(and resulting alleged limiting effect of lack of focus/concentration) being found inconsistent with the record evidence. Plaintiff's argument is that the ALJ should have found Plaintiff's allegations consistent with the record and converted Plaintiff's allegation of pain affecting concentration into an RFC limitation. This issue is properly considered under the SSR16-3p framework.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.

---

[3] In response, Defendant focuses on SSR 96-8p, titled Assessing [RFC]. (ECF No. 23 at 7).

1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR

16-3p, at *11.

The ALJ expressly considered that Plaintiff "alleged that pain interferes with her ability to concentrate and said that she made regular mistakes in her last job." (Tr. 23). After summarizing evidence that is further discussed below, the ALJ found: "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the evidence." (Tr. 25). The evidence discussed by the ALJ relevant to the SSR 16-3p factors is as follows. The ALJ noted a MRI showing severe changes pre-surgery. (Tr. 23). After surgery, Plaintiff reported no leg pain and minimal back pain by August 2016. (Tr. 23). In October 2016, Plaintiff was taking Tylenol as needed for minimal pain. Plaintiff had a normal exam. (Tr. 24). In July 2018, Plaintiff was seen by Dr. Vujicic and had mild pain. (Tr. 24). In September 2018, Dr. Vujicic noted tramadol was effective in reducing Plaintiff's mild lower back pain. Plaintiff had positive straight leg raise tests but with normal strength and gait. (Tr. 24). In June 2019, Plaintiff had injections and nerve root blocks reporting a 50% reduction in pain. By September 2019, Plaintiff's exam was unchanged, but Plaintiff reported taking up to eight tramadols per day. (Tr. 24). Plaintiff's exams did not change until April 2020 where Plaintiff was walking with a cane due to increased pain. (Tr. 24). At the visit, Plaintiff had negative straight leg raise and normal strength. In September 2020, Plaintiff reported she was able to complete activities of daily living. (Tr. 24).

The ALJ discussed in April 2019 Plaintiff had a consultative exam with positive straight leg raise and normal strength with extreme tenderness over lumbar spine. The ALJ noted the opinion was only partially persuasive as to opined limitations because other evidence indicated "that the claimant reported greatly reduced pain after her" surgery and "that her pain has been well-controlled with medications and injections." (Tr. 25). In support of this statement, the ALJ cited to the exhibits

that are all Dr. Vujivic's notes (Exs. 3F, 11F, 19F, 23F) and are summarized below. (Tr. 25, 399-408, 552-619, 919-964, 1076-1085). Notes before the April 2016 surgery noted Plaintiff was taking oxycodone and tramadol. (Tr. 552). In June 2015, Plaintiff had a 75% reduction in pain from injections; Ultram and neurontin were effective in reducing shooting pain. (Tr. 568). In August 2015, after one injection, lower back pain was improving, but leg pain was unchanged. Plaintiff received another injection. (Tr. 564). Plan in September 2015 was to start with lumbar facet blocks and then radio-frequency ablation. (Tr. 558). In June 2016, Plaintiff requested to stop oxycodone and start tramadol. (Tr. 612). In November 2016, it was noted tramadol was effective in reducing mild lower back pain. (Tr. 610). In January 2018, Plaintiff was noted to have some lower back pain but well controlled with tramadol. (Tr. 604). In July 2018, tramadol was effective in reducing mild lower back pain. Upon exam, Plaintiff had mild pain, normal gait, normal strength, and negative straight leg raise (Tr. 405). In September 2018, it was noted Plaintiff had mild lower back pain for which tramadol was effective in reducing. (Tr. 600) In November 2018, tramadol was noted to be somewhat effective in reducing moderate lower back pain. (Tr. 401). Upon exam, Plaintiff had mild pain over lumbar region, normal gait, normal strength, and positive straight leg raise. (Tr. 401). Tramadol in February 2019 was somewhat effective in reducing moderate lower back pain. (Tr. 399). Upon exam, Plaintiff only had mild pain over lumbar region. Plaintiff had normal gait, normal strength, and positive straight leg raise. (Tr. 399). Medications were refilled. (Tr. 400). In May 2019, Percocet was started and tramadol stopped because Plaintiff reported not helping over a two week time period; Plaintiff did not like Percocet and was put back on tramadol the next visit. (Tr. 591). Upon exam, Plaintiff had mild pain, normal gait, normal strength, and positive straight leg raise. In September 2019, it is noted a block provided for short term reduction in pain and that day there was

moderate to severe lower back pain reported, which tramadol was helping but at up to eight a day. (Tr. 582). Upon exam, Plaintiff had mild pain, normal gait, normal strength, and positive straight leg raise. (Tr. 582). In September 2019, it was noted tramadol was effective in reducing mild lower back pain. (Tr. 403). Upon exam, Plaintiff had mild pain, normal gait, normal strength, and negative straight leg raise. (Tr. 403). Medications were refilled. In November 2019, Dr. Vujicic noted Plaintiff had low back pain for which tramadol was helping. Plaintiff denied side effects. (Tr. 580). Upon exam, Plaintiff had mild pain, normal gait, normal strength, and positive straight leg raise. (Tr. 580). In March 2020, it is noted tramadol was helping low back pain and exams similar as others. (Tr. 924). In April 2020, Plaintiff was using a cane. (Tr. 921). Plaintiff was still receiving a 240 pill prescription of tramadol. (Tr. 921). Tramadol was helping pain and Plaintiff was able to complete activities of daily living. Plaintiff was using a cane at that appointment in October 2020. (Tr. 1076). Similar was noted in September 2020. (Tr. 1079). Narcan spray was prescribed. (Tr. 1080). Plaintiff had negative straight leg test during this time.

The ALJ also found the consultant's opinion inconsistent with longitudinal records of normal gait and strength with a multitude of exhibits cited. The ALJ noted in spite of pain Plaintiff regularly exhibited normal exam findings, citing Dr. Vujivic's notes(Exs. 3F, 19F). (Tr. 25). As to medications, Plaintiff reported only mild side effects that are controlled with other medications. (Tr. 26). The ALJ concluded: "Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by evidence of normal strength, range of motion, muscle tone and sensation in spite of back pain, shoulder pain and intermittent

neuropathic pain (Exhibits 2F, 3F, 9F, 11F, 12F, 15F, 19F, 20F, 24F)." (Tr. 26).[4]

As displayed above, the ALJ considered a multitude of the SSR 16-3p factors, like Plaintiff's allegations regarding the presentation of pain, the type, dosage, effectiveness, and side effects of medication, and treatment other than medication. (Tr. 23-26). While there is no express explanation by the ALJ as to why the RFC contains no limitation as to concentration, the ALJ fully analyzed Plaintiff's subjective complaints and pain, which Plaintiff argues is what causes the concentration issues.[5] The ALJ supported her finding–that Plaintiff's limiting effects from Plaintiff's symptoms/pain were inconsistent with the record–with citation to substantial evidence. There is no outcome determinative error here; Plaintiff's pain was analyzed in accordance with the appropriate regulations by the ALJ. *See also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion

---

[4] There is further evidence in the record not specifically relied on by the ALJ, like normal concentration exams. In an analysis under the substantial evidence standard of review, only evidence that was relied on by the ALJ can act as support. The court does not trawl the record; Defendant's brief contains post-hoc rationalization not considered by the court. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.")

[5] As a matter of thoroughness, the undersigned has reviewed the RFC narrative and the exhibits cited by the ALJ. The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). The court does not reweigh the evidence. *See Johnson v. Saul*, No. 5:20-cv-47-KDW, 2021 WL 717250, at *10 (D.S.C. Feb. 24, 2021)("Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings.") The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. Substantial evidence supports the ALJ's RFC.

unless there is reason to believe that the remand might lead to a different result").

As discussed above, the ALJ reviewed Plaintiff's testimony, reports, and medical records, and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were inconsistent with the evidence. (Tr. 25). A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529.  An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision.  Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were inconsistent with the record.

### III. CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the court to enter a

judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

October 21, 2022
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge